UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| OSCAR YBARRA | CIVIL ACTION |
| VERSUS | NO: 17-7431 |
| INTERNATIONAL SHIPHOLDING CORP., ET AL. | SECTION: "A" (3) |

### ORDER AND REASONS

Before the Court is a **Motion for Partial Summary Judgment (Rec. Doc. 42)** filed by Defendants International Shipholding Corporation, U.S. United Ocean Services, and The Standard Club Europe, Ltd (herein after collectively referred to as "Defendants"). Plaintiff Oscar Ybarra opposes the motion (Rec. Doc. 58, 66) and Defendants replied (Rec. Doc. 69). This motion, noticed for submission on February 13, 2019, is before the Court on the briefs without oral argument.[1] Having considered the motion, memoranda of counsel, the opposition, the reply, the record, and the applicable law, the Court finds that Defendants' **Motion for Partial Summary Judgment (Rec. Doc. 42)** is **DENIED** in part and **GRANTED** in part for the reasons set forth below.

**I.    Background**

International Shipholding Corp. contracted with Inmarsat U.S. Holdings, Inc. ("Inmarsat") to install a satellite communications system aboard the M/V COASTAL 101. (Rec. Doc. 22 Amended Complaint, ¶ 4). As an Inmarsat employee, Oscar Ybarra installed the system on the mast of the vessel on May 9, 2015. (*Id.*). During his descent of the mast, Ybarra fell and

---

1 The Court notes that Defendants requested oral argument. (Rec. Doc. 43). The Court determines that oral argument is not necessary at this time.

sustained injuries. (*Id.* at 11-12). Originally filed in state court, the case was removed and amended for claims pursuant to General Maritime Law. (*Id.* at 2). Defendants now move the Court to dismiss the case on summary judgment. Defendants allege that there exists no genuine issue of material fact that as the vessel owner, Defendants did not owe nor breach a duty to Ybarra.

## II.     Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id*. (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986)). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id*. (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993)).

## III.    Discussion

Defendants argue that as a repairman, Ybarra is a longshore worker whose claims fall

sustained injuries. (*Id.* at 11-12). Originally filed in state court, the case was removed and amended for claims pursuant to General Maritime Law. (*Id.* at 2). Defendants now move the Court to dismiss the case on summary judgment. Defendants allege that there exists no genuine issue of material fact that as the vessel owner, Defendants did not owe nor breach a duty to Ybarra.

## II.     Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id*. (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986)). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id*. (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993)).

## III.    Discussion

Defendants argue that as a repairman, Ybarra is a longshore worker whose claims fall

under Section 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b). (Rec. Doc. 42, p. 12). Defendants apply the Supreme Court's holding in *Scindia Steam Nav. Co., Ltd. v. De Los Santos* to argue that as the third-party vessel owner, Defendants are not liable for Ybarra as a longshoreman. (*Id.* at 13). Ybarra does not oppose the classification of his claims as falling under the LHWCA and the duties defined by the Court in *Scindia.* (Rec. Doc. 58, p. 10). Ybarra opposes summary judgment in how *Scindia* is applied to the facts of his claim. (*Id.*).

33 U.S.C. § 905(b) provides, "If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel." In *Scindia Steam Nav. Co., Ltd. v. De Los Santos,* the Supreme Court limited the duties that vessel owners owe pursuant to § 905(b). 451 U.S. 156, 165, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). The Court held that "the vessel owes to the stevedore and his longshoremen employees the duty of exercising due care 'under the circumstances.'" *Id.* at 167. The Fifth Circuit has well-established that "the basic principle which emerges from *Scindia* is that the primary responsibility for the safety of the longshoreman rests upon the stevedore." *Kirksey v. Tonghai Maritime*, 535 F.3d 388, 391 (5th Cir. 2008) (quoting *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1245 (5th Cir. 1997)). Vessel owners owe three narrow duties to longshoremen: (1) a turnover duty; (2) a duty to exercise reasonable care in the areas of the ship under the active control of the vessel; and (3) a duty to intervene. *Id.* The Court will now apply these three duties to the facts of the instant case to determine whether there exists a genuine issue of material fact.

**A. Turnover Duty**

The turnover duty is a narrow duty on the shipowner before or at the commencement of

the stevedore's activities encompassing the duties to (1) exercise ordinary care under the circumstances to turn over the ship and its equipment in such condition that an expert stevedore can carry on stevedoring operations with reasonable safety and (2) warn the stevedore of latent or hidden dangers which are known to the vessel owner or should have been known to it. *Kirksey,* 535 F.3d at 392. This duty is to the exclusion of dangers that are open and obvious or dangers that a reasonable competent stevedore should anticipate encountering. *Id.*

Defendants argue there exists no genuine issue of fact regarding the vessel owner's turnover duty. (Rec. Doc. 42, p. 17). Defendants contend that the harness, ladder, and mast were not only turned over in a reasonable and safe condition, but Ybarra testified that he did not inspect the hook and harness. (*Id.*). Defendants cite the deposition of Ybarra and members of the vessel's crew to assert that the ladder and harness did not possess any defects or unsafe conditions. (*Id.* at 19). In furtherance of their position, Defendants also argue that crew members testified that no other individual has previously had an incident while climbing the mast. (*Id.*). As there had never been any incident in the past, Defendants assert that there is an absence of evidence that Defendants knew or should have known of a latent or hidden defect. (Rec. Doc. 69, p. 5).

Ybarra concedes that the danger has nothing to do with the physical integrity and condition of the mast, ladder, and harness. (Rec. Doc. 58, p. 14). Ybarra argues that the vessel owner breached the turnover duty because the ladder on the mast of the M/V COASTAL 101 presented a unique hazard that required an individual to stand on the yardarm, unclip the harness, and transfer from the front of the mast to the back navigating with the mast between his legs, and then reclip. (*Id.* at 16). Ybarra argues that though the hazard of this particular maneuver was known to the crew, Ybarra had not received safety training, and the vessel only furnished him

with a single tether harness. (Rec. Doc. 66, p. 7). Ybarra contends that the crew failed to disclose the extra protection afforded by a dual leg harness which would have harnessed Ybarra during the entire ascent and descent of the mast, even during the hazardous cross-over. (*Id.*).

In his amended opposition, Ybarra cites the depositions of Ken Strong and Mike Cameron. According to Ybarra, these men were employed to provide ship management services, such as risk management, on Defendant International Shipholding Corporations' vessels, and they were involved in the investigation of Ybarra's accident and the preparation of OSHA reporting forms. (Rec. Doc. 66, p. 3). Ybarra uses these depositions to assert that they could not explain why a "Working Aloft Permit" or "Job Risk Analysis" was not performed for Ybarra's job. (*Id.* at 6). Ybarra asserts that the unique hazard was not open and obvious to a non-crew member who didn't receive the requisite training. (*Id.* at 7).

The Court concludes that a genuine issue of material fact exists as to whether the vessel owner breached the turnover duty. Based upon the evidence provided by the parties, a reasonable trier of fact could find that the vessel owner of the M/V COASTAL 101 failed to exercise ordinary care when it turned over the vessel only equipped with a single tethered harness. Both Second Mate Crow and Captain Rabren testified that they were familiar with the additional safety afforded by a dual harness. Though Second Mate Crow had never seen an individual use one, he testified that he had seen a two-tethered harness used in training. (Rec. Doc. 58-4, p. 18). Captain Rabren testified that he had seen double harnesses used on vessels "after the fact." (Rec. Doc. 58-6, p. 8). The fact that a two-tethered harness had not previously been used aboard the vessel is not determinative of whether a genuine issue of material fact exists as to the issue of whether it was a reasonably safe condition for the longshoreman to carry out his operations.

The Court finds that a genuine issue of material fact exists as to whether the danger of not

having a two-tethered harness was open and obvious to an individual, such as Ybarra, who was not accustomed to the mast aboard the M/V COASTAL 101. Cameron testified that the job performed by Ybarra required a Job Safety Analysis ("JSA") to be performed. (Rec. Doc. 66-1, p. 50). A JSA is typically performed by the captain and Cameron is not aware of any conversation Captain Rabren had with Ybarra at any time. (*Id.* at 49). Captain Rabren testified that when he brought the harness to Ybarra, he asked Ybarra if he knew how to put it on and use it to which Ybarra answered, "Yes." (Rec. Doc. 42-2, p. 16). After this question, Ybarra proceeded to climb the mast. (*Id.* at 17). A reasonable trier of fact could conclude that the lack of a risk safety assessment, typically required onboard the vessel, precluded Ybarra of the knowledge of the danger rendering the danger not open and obvious. For these reasons, the Court denies summary judgment on the breach of the turnover duty.

   **B. Active Control Duty**

     The Supreme Court defines the active control duty as:

> [T]he vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from the hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation.

*Scindia,* 451 U.S. at 167. In determining whether a vessel owner retains active control, the Fifth Circuit has held that it will generally consider if: (1) the area in question is within the contractor's work area; (2) the work area has been turned over to the contractor; and (3) the vessel owner controls the methods and operative details of the stevedore's work. *Dow v. Oldendorff Carriers GMBH & Co.*, 387 Fed.Appx. 504, 507 (5th Cir. 2010).

     Defendants argue that Ybarra was working in his work area, this work area had been turned over to Ybarra by the vessel, and neither the vessel nor the crew had control over the

methods or operative details of Ybarra's work. (Rec. Doc. 42-1, p. 23). Ybarra responds by asserting that the crew was supervising Ybarra and that the crew chose to exercise a basic level of control by providing him with the harness. (Rec. Doc. 58, p. 18).

The Court finds that there is no genuine issue of material fact with respect to the active control duty. Ybarra doesn't appear to dispute nor is there any evidence to the contrary that the work area, the mast, was within Ybarra's control and had been turned over to Ybarra. Ybarra's deposition provides that none of the crew members gave him instructions on how to perform his job. (Rec. Doc. 42-3, p. 43). This is further supported by the depositions of Captain Rabren and Second Mate Crow. Captain Rabren testified that it was not his role to instruct Ybarra because Ybarra was the "technical expert." The only role Captain Rabren was responsible for was "to tie a crescent wrench on the end of a heaving line if [Ybarra] needed a wrench." (Rec. Doc. 42-4, p. 19). Second Mate Crow stated, "It was expected that [Ybarra] could complete the work entirely on his own." (Rec. Doc. 42-5, p. 17). Ybarra argues that this crew activity constituted supervision; however, in his deposition Second Mate Crow states, "I wouldn't say supervising…keeping an eye Oscar Ybarra, I assumed partly from a safety point of view, partly to help expedite the repairs, because [Captain Rabren] could help hand him tools and connect cables to tag lines without Ybarra having to go up and down the mast, small things like that." (Rec. Doc. 58-4, p. 4). The Fifth Circuit has declined to find that watching over operations establishes active control. *Dow,* 387 Fed.Appx. at 507. Therefore, this Court finds that no genuine issue of material fact exists; Defendants did not retain active control such as to establish liability.

C. **Duty to Intervene**

The Fifth Circuit has outlined the requirements under *Scindia* for a vessel owner to be

methods or operative details of Ybarra's work. (Rec. Doc. 42-1, p. 23). Ybarra responds by asserting that the crew was supervising Ybarra and that the crew chose to exercise a basic level of control by providing him with the harness. (Rec. Doc. 58, p. 18).

The Court finds that there is no genuine issue of material fact with respect to the active control duty. Ybarra doesn't appear to dispute nor is there any evidence to the contrary that the work area, the mast, was within Ybarra's control and had been turned over to Ybarra. Ybarra's deposition provides that none of the crew members gave him instructions on how to perform his job. (Rec. Doc. 42-3, p. 43). This is further supported by the depositions of Captain Rabren and Second Mate Crow. Captain Rabren testified that it was not his role to instruct Ybarra because Ybarra was the "technical expert." The only role Captain Rabren was responsible for was "to tie a crescent wrench on the end of a heaving line if [Ybarra] needed a wrench." (Rec. Doc. 42-4, p. 19). Second Mate Crow stated, "It was expected that [Ybarra] could complete the work entirely on his own." (Rec. Doc. 42-5, p. 17). Ybarra argues that this crew activity constituted supervision; however, in his deposition Second Mate Crow states, "I wouldn't say supervising…keeping an eye Oscar Ybarra, I assumed partly from a safety point of view, partly to help expedite the repairs, because [Captain Rabren] could help hand him tools and connect cables to tag lines without Ybarra having to go up and down the mast, small things like that." (Rec. Doc. 58-4, p. 4). The Fifth Circuit has declined to find that watching over operations establishes active control. *Dow,* 387 Fed.Appx. at 507. Therefore, this Court finds that no genuine issue of material fact exists; Defendants did not retain active control such as to establish liability.

C. **Duty to Intervene**

The Fifth Circuit has outlined the requirements under *Scindia* for a vessel owner to be

liable under the duty to intervene. The two conditions for the imposition of the duty of the vessel owner to intervene are "[1] the shipowner's actual knowledge of a danger to the longshoreman, and [2] the shipowner's knowledge that the longshoreman's employer is not acting reasonably to protect its employees from that danger." *Casaceli v. Martech International, Inc.*, 774 F.2d 1322, 1328 (5th Cir. 1985). The additional considerations a court should take into account include: "whether the danger was open and obvious; whether the danger was located within the ship or the ship's gear; which party created the danger or used the defective item and was therefore in a better position to correct it; which party owned and controlled the defective item; whether an affirmative act of negligence or acquiescence in the use of the dangerous item occurred; and whether the shipowner assumed any duty with regard to the dangerous item." *Id.*

Defendants argue that there is no genuine issue of material fact that the vessel owner did not owe a duty to supervise or inspect Ybarra's work. (Rec. Doc. 42, p. 23). Defendants contend that there is no evidence that they knew of a danger or hazard as several crew members and Ybarra had navigated the mast several times without incident. (*Id.* at 24). Defendants also assert that there is no evidence to show that Defendants couldn't rely on Ybarra as an experienced worker to correct a danger or voice an objection to the harness. (*Id.*).

Ybarra responds by asserting that Defendants knew Ybarra relied upon the vessel to provide him with appropriate equipment. (Rec. Doc. 58, p. 19). Also, Ybarra argues that Captain Rabren failed to issue safety protocols and failed to provide any instruction to Ybarra about navigating the mast, yet the captain knew that a dual harness would provide additional protection. (*Id.*). Ybarra argues the same with regard to Second Mate Crow in that he also knew of the additional safety afforded by the dual harness, yet he failed to intervene and alert Ybarra of the hazard. (*Id.* at 20).

The Court denies Defendants' motion for summary judgment on the issue of whether the vessel owner breached the duty to intervene. A reasonable trier of fact could conclude that the vessel owner knew of the danger presented when Ybarra ascended and descended a portion of the mast untethered. As explained above regarding the turnover duty, both Second Mate Crow and Captain Rabren testified that they were familiar with the additional safety afforded by a dual harness. Captain Rabren also knew that Ybarra was not trained on the safety protocols of M/V COASTAL 101. Upon observing Ybarra ascending and descending a portion of the mast untethered, a reasonable trier of fact could conclude that the vessel owner breached the duty to intervene. The Court denies summary judgement with regard to the breach of the duty to intervene.

### IV. Conclusion

Accordingly,

IT IS ORDERED that Defendants' **Motion for Summary Judgment (Rec. Doc. 42)** is **DENIED** in part and **GRANTED** in part. Plaintiff's claims for breach of the "active control duty" are dismissed with prejudice.

March 18, 2019

JUDGE JAY C. ZAINEY<br>
UNITED STATES DISTRICT JUDGE